UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Bremer Bank, National Association,
a national banking association,

            Plaintiff,            **MEMORANDUM OPINION
AND ORDER**
v.            Civil No. 06-1534 ADM/JSM

John Hancock Life Insurance Company,
a Massachusetts Corporation,

            Defendant.

___

Paul L. Ratelle, Esq., Fabyanske, Westra, Hart & Thomson, P.A., Minneapolis, MN, on behalf of Plaintiff.

David S. Cohen, Esq. and Daniel DeSouza, Esq., Milbank, Tweed, Hadley & McCloy LLP, Washington, DC; and Todd C. Pearson, Esq., Dorsey & Whitney, LLP, Minneapolis, MN, on behalf of Defendant.

___

## I. INTRODUCTION

On January 26, 2007, oral argument before the undersigned United States District Judge was heard on Defendant John Hancock Life Insurance Company's ("Hancock") Motion for Judgment on the Pleadings [Docket No. 52]. In its Amended Complaint [Docket No. 29], Bremer Bank, National Association ("Bremer") alleges a breach of contract claim. For the reasons stated herein, Hancock's Motion is denied.

## II. BACKGROUND

**A.    The Parties and the Documents**

The instant litigation concerns a Boeing 757-251 aircraft bearing U.S. Registration number N526US (the "Aircraft") and the foreclosure of Bremer's interest in the Aircraft after Northwest Airlines, Inc.'s ("NWA") bankruptcy filing. The Aircraft is the subject of a number

of documents relevant to this litigation, including a Participation Agreement, Am. Compl. Ex. A; an Indenture, Am. Compl. Ex. B; a Trust Agreement, Am. Compl. Ex. C; a Lease, Am. Compl. Ex. D; and Secured Certificates.[1] Collectively, these documents are known as the "Operative Documents." Am. Compl. ¶ 10. There is also an Assignment Agreement, Am. Compl. Ex. E.

There are a number of parties who were ultimately involved in the acquisition, finance, and lease of the Aircraft.[2] Bremer is the current "Owner Participant," after purchase and assignment of the previous Owner Participant's interest for $8,890,000 in 1999. Id. ¶¶ 7a, 12. The Owner Participant has a right to deliver instructions to the Owner Trustee that are binding upon the Owner Trustee pursuant to the Trust Agreement. Id. ¶ 24. Hancock is a current "Loan Participant" and became a Loan Participant by acquiring Secured Certificates. Id. ¶¶ 7b, 15. Hancock holds a sufficient percentage of the outstanding principal amount of the Secured Certificates to constitute a "Majority in Interest of Certificate Holders," which gives Hancock the right to issue binding instructions to the Indenture Trustee with respect to the exercise of remedies under the Indenture in an event of default. Id. ¶ 16, Ex. B § 5.01-.02. The Indenture indemnifies the Indenture Trustee for following the Certificate Holder's instructions. Id. ¶ 17, Ex. B. § 5.03. U.S. Bank National Association ("U.S. Bank") is both the current Owner Trustee

---

[1] Many of these documents were amended over time, but the history of the amendments, while important, will not be set forth unless relevant to the issue presented herein.

[2] All of the current parties, except for NWA, now stand in the place of the original parties to this transaction. An explanation of the identities of the original parties is not relevant to this Order.

and the current Indenture Trustee.[3]  Id. ¶¶ 7c, d.  NWA is the Lessee.  Id. ¶ 7e.

**B.      The Leveraged Lease Transaction**

The acquisition, finance, and lease of the Aircraft was accomplished through an aircraft leveraged lease transaction.  The original Owner Participant (1) made an equity investment in the Aircraft and (2) authorized the Owner Trustee to obtain a loan under the Indenture from the original Loan Participant to pay the remaining cost of the Aircraft.  Id. ¶¶ 7, 10a.  The Owner Trustee then held the Aircraft and Lease in trust for the benefit of the Owner Participant, and leased the Aircraft to NWA.  Id. ¶¶ 10a, b.  Under the Indenture entered into by the original Owner Trustee and the original Indenture Trustee, the original Owner Trustee (1) issued Secured Certificates to the original Loan Participant to evidence the loans being made, and (2) granted a security interest in the Aircraft and the Lease to the original Indenture Trustee to secure the payment of the original Secured Certificates.  Id. ¶ 10c.  The Secured Certificates were later refinanced, and other entities acquired Secured Certificates to become Certificate Holders and Loan Participants.  Id. ¶ 11.  In aircraft leveraged lease transactions, the parties agree that the cash flow from the lease payments will pay the principal of, and interest on, the debt incurred to finance the purchase of the aircraft.  Id. ¶ 18.

Bremer avers that it is common in aircraft leveraged transactions for the owner participant to negotiate for the inclusion of a contractual provision protecting it against the loss of its equity position in the transaction if the lessee defaults under the lease.  Id. ¶ 19.  This is

---

[3] Bremer avers that U.S. Bank had an irreconcilable conflict of interest created by the opposing positions of Bremer and Hancock, and the ability of both to issue binding instructions to U.S. Bank based on its dual identity as both Owner Trustee and Indenture Trustee.  Am. Compl. ¶ 25.

known as an "equity squeeze protection" clause. Id. Such a clause imposes a condition precedent that the indenture trustee must first exercise remedies against the lessee under the lease prior to exercising remedies against the owner participant's equity interest in the aircraft and the lease. Id. An indenture trustee's attempt to foreclose the interests of the owner participant without first exercising remedies under the lease against the defaulting lessee is commonly known in the aircraft industry as an "equity squeeze." Id. The Indenture in this case contains such an equity squeeze protection clause. Id. ¶ 20, Ex. B § 4.04(a).

**C.     NWA's Bankruptcy and Rejection of the Lease**

On September 14, 2005, NWA filed petitions for bankruptcy under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. Id. ¶ 26. Shortly thereafter, NWA filed a motion to reject certain aircraft leases. Id. ¶ 28, Ex. F-1. The Aircraft at issue here was identified as one that could benefit NWA "if the lease or debt terms were revised." Id. The Bankruptcy Court granted NWA's motion, giving NWA 45 days to negotiate revised lease terms. Id. ¶ 28, Ex. F-2.

NWA's bankruptcy also triggered the statutory remedies of aircraft financiers under Section 1110 of the Bankruptcy Code, 11 U.S.C. § 1110. Id. ¶ 29. Under Section 1110, NWA is required, within 60 days after the commencement of the bankruptcy case, to make a "1110 Election" by either agreeing to perform the Lease and cure any defaults thereunder or relinquish possession of the Aircraft to the Lessor. Id. Bremer avers that Hancock instructed the Indenture Trustee to enter into a series of stipulations (the "Stipulations") with NWA pursuant to 11 U.S.C. § 1110(b) that (1) extended the 60 day period under 11 U.S.C. § 1110(a)(2) with respect to the Aircraft through May 2006 (the "extension period"), (2) limited NWA's obligation to make

4

payments under the Lease to $130,000 per month during the extension period, and (3) limited the Indenture Trustee's exercise of any remedy under the Operative Documents until there was an event of default under the Stipulations.  Id. ¶ 30, Ex. G.  An event of default under the Stipulations did not occur.  Id. ¶ 30.

On March 2, 2006, NWA filed a Motion ("Rejection/New Lease Motion") in Bankruptcy Court seeking approval of a term sheet, pursuant to which NWA would (1) reject the Lease, (2) agree to an unsecured claim of $15,000,000 for rejection damages in favor of the Indenture Trustee, and (3) enter into a new lease.  Id. ¶ 31, Ex. H.  Bremer objected to the Rejection/New Lease Motion.  Id. ¶ 33, Ex. I.  At the hearing on the Motion on March 28, 2006, Hancock appeared and argued against Bremer's objection.  Id. ¶ 34, Ex. J.  The Bankruptcy Court continued the hearing to May 2006, at which time a hearing on valuation and the commercial reasonableness of the proposed new lease transactions would occur.  Id. ¶ 34, Ex. J at 50-52.  Meanwhile, Hancock agreed to extend the extension period under the Stipulations to the May hearing, and the continuance gave Hancock/U.S. Bank time to foreclose Bremer's equity interest, which would moot Bremer's objection.  Id. ¶ 34, Ex. J at 50.

**D.     Foreclosure**

On March 30, 2006, the Indenture Trustee, following Hancock's instructions, served upon the Owner Trustee and Bremer an Acceleration Notice and Notice of Public Sale of Collateral, accelerating the payment of the Secured Certificates and setting May 2, 2006 as the date for a public auction foreclosing Bremer's equity interest in the Trust Indenture Estate.  Id. ¶ 35, Ex. K.  Bremer then filed the original Complaint [Docket No. 1] in this proceeding on April 24, 2006, and an Application for a Temporary Restraining Order ("TRO") [Docket No. 5] on

April 25, 2006. Id. ¶ 36. Bremer's Application for a TRO was denied. Id.; Order [Docket No. 17]. On May 2, 2006, the Indenture Trustee conducted the foreclosure sale of the Owner Trustee's interest and Bremer's beneficial equity interest in the Trust Indenture Estate. Am. Compl. ¶ 37, Ex. M. VX Capital Partners ("VX") won the bid for the Aircraft. Id. ¶ 38, Ex. M. VX bid $12,550,093.26, $100,000 greater than the "credit bid" made by the Indenture Trustee. Id. ¶ 38, Ex. M. U.S. Bank, acting in its capacity as Owner Trustee, then signed a Quitclaim Deed and Lease Assignment and Assumption Agreement, transferring the Trust Indenture Estate to VX's designated buyer. Id. ¶ 39, Ex. N. On May 18, 2006, the Bankruptcy Court held its continued hearing on NWA's Rejection/New Lease Motion. Id. ¶ 40, Ex. O. Bremer did not interpose any further objection at that time because the foreclosure sale deprived it of its standing to object. Id. ¶ 40, Ex. O at 5-6. The Bankruptcy Court granted NWA's Motion and approved the term sheet. Cohen Aff. [Docket No. 55] Ex. A.

**E.     Bremer's Claims**

In this action, Bremer alleges breach of contract against Hancock based on Hancock's alleged breach of the Participation Agreement and the Indenture, and the implied covenant of good faith and fair dealing. Am. Compl. ¶¶ 7, 8. Bremer also alleges that Hancock instructed the Indenture Trustee to foreclose its security interest in the Trust Indenture Estate in a manner that was not commercially reasonable under Article 9 of the New York Uniform Commercial Code ("NYUCC"). Id. ¶ 9.

### III. DISCUSSION

**A.     Standard of Review**

Federal Rule of Civil Procedure 12(c) provides that any party may move for judgment on

the pleadings after the pleadings are closed but within such time as not to delay the trial. The standard of review for a motion for judgment on the pleadings is the same as that for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Bisciglia v. Lee, 370 F. Supp. 2d 874, 877 (D. Minn. 2005). In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880. "A motion to dismiss should be granted as a practical matter . . . only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

"When considering a motion for judgment on the pleadings . . . the court generally must ignore materials outside the pleadings, but it may consider 'some materials that are part of the public record or do not contradict the complaint,' as well as materials that are 'necessarily embraced by the pleadings.'" Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted). Also, "materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint." Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). In this case, all but one of the exhibits are attached to the Amended Complaint, and they are either part of the public record or embraced by the pleadings. Thus, the exhibits submitted by the parties will be considered here.

**B.      Necessary and Indispensable Party**

Hancock argues Bremer's claims should be dismissed because U.S. Bank, in its capacity

as the Indenture Trustee, is both a necessary and indispensable party.  Rule 19 of the Federal Rules of Civil Procedure provides in relevant part:

> **(a) Persons to be Joined if Feasible.**  A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.  If the person has not been so joined, the court shall order that the person be made a party. . . .
>
> **(b) Determination by Court Whenever Joinder not Feasible.**  If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable.  The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Rule 19 places an emphasis on pragmatism and requires a court to make a "highly practical, fact-based decision."  Pulitzer-Polster v. Pulitzer, 784 F.2d 1305, 1309 (5th Cir. 1986).  A court must first determine whether a person is necessary under Rule 19(a).  Dominium Austin Partners, L.L.C. v. Emerson, 248 F.3d 720, 725 (8th Cir. 2001).  "If the person is not necessary, then the case must go forward without him and there is no need to make a Rule 19(b) inquiry."  Gwartz v. Jefferson Mem'l Hosp. Ass'n, 23 F.3d 1426, 1428 (8th Cir. 1994).  "Rule 19(a)(1) requires joinder only when the absence of the unjoined party prevents complete relief among the current parties . . . .  The focus is on relief between the parties and not on the speculative possibility of further litigation between a party and an absent person."  LLC Corp. v. Pension

8

Benefit Guar. Corp., 703 F.2d 301, 305 (8th Cir. 1983).

As an initial matter, Bremer argues that joinder of U.S. Bank would destroy diversity and divest this Court of subject matter jurisdiction. However, Bremer's assertion is incorrect, since Bremer is a citizen of Minnesota and U.S. Bank is a citizen of Ohio. See Wachovia Bank, Nat'l Ass'n v. Schmidt, 546 U.S. 303, 126 S. Ct. 941, 945 (2006) (holding that a national bank is a citizen of the state in which its main office, as set forth in its articles of association, is located).

The first question to be addressed under Rule 19(a)(1) is whether complete relief can be accorded between Bremer and Hancock if U.S. Bank, in its capacity as Indenture Trustee, is not joined as a party. The Advisory Committee Notes to Rule 19 state:

> Clause (1) stresses the desirability of joining those persons in whose absence the court would be obliged to grant partial or "hollow" rather than complete relief to the parties before the court. The interests that are being furthered here are not only those of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter.

Hancock has not alleged any reason that complete relief can not be accorded to Bremer and Hancock without U.S. Bank as a party. Bremer avers that it is seeking to enforce its contractual rights based solely on Hancock's alleged breach of contract, and that it is not seeking to enforce any right in or title to trust property—here, the Aircraft. In fact, the Aircraft and Lease have been sold, so pursuing any interest in the Aircraft itself is not feasible.[4] It is possible that Bremer could sue U.S. Bank at a later date for essentially the same conduct—foreclosing Bremer's interest in the Aircraft in violation of the Operative Documents. However, Bremer alleges here that U.S. Bank was required to follow Hancock's binding instructions based on its status as a

---

[4] Because the focus of this Motion is Hancock's alleged breach of contract and not a determination of who has title to the Aircraft, Hancock's "real party in interest" argument is not reached.

9

Majority in Interest of Certificate Holders, and that U.S. Bank has a right to indemnification for any liability it incurred in carrying out the instructions of the Certificate Holders. Thus, Bremer's position in this suit is an obstacle to suing U.S. Bank separately in the future for its actions as the Indenture Trustee. Based on the claims alleged by Bremer, there appears to be no reason that complete relief between the parties present can not be accorded in U.S. Bank's absence. U.S. Bank is not a necessary person under 19(a)(1).

The second question under Rule 19(a)(2) is whether U.S. Bank claims an interest relating to the subject of this action and is so situated that the disposition in U.S. Bank's absence may (1) as a practical matter impair or impede U.S. Bank's ability to protect its interest or (2) leave Hancock subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of U.S. Bank's claimed interest. The Advisory Committee Notes to Rule 19 state:

> Clause (2)(i) recognizes the importance of protecting the person whose joinder is in question against the practical prejudice to him which may arise through a disposition of the action in his absence. Clause (2)(ii) recognizes the need for considering whether a party may be left, after the adjudication, in a position where a person not joined can subject him to a double or otherwise inconsistent liability.

There has been no allegation that U.S. Bank "claims" an interest relating to Bremer's breach of contract claim against Hancock. However, it may be assumed that U.S. Bank does have an interest in this litigation, since the Amended Complaint alleges that U.S. Bank, in its capacity as the Indenture Trustee, took actions to foreclose Bremer's interest in the Aircraft, albeit at the direction of Hancock. Some prejudice may arise to U.S. Bank if this case is disposed of in its absence. Although the result of this case is not binding on U.S. Bank as long as it is not a party, "[t]he case law under Rule 19 has recognized that the establishment of a

negative precedent can provide the requisite prejudice to the absentee." Pulitzer-Polster, 784 F.2d at 1310. A future court may look to the result in this case even if not bound by it in a lawsuit between Bremer and U.S. Bank. However, as already discussed, U.S. Bank is indemnified for any liability it incurred as a result of following Hancock's instructions. Therefore, any prejudice to U.S. Bank only weighs slightly in favor of finding it a necessary party to this action under Rule 19(a)(2)(i).

Under 19(a)(2)(ii), there is a risk that Hancock could incur double liability as a result of U.S. Bank's interest, because if Bremer were to successfully sue U.S. Bank in the future, Hancock would be required to indemnify U.S. Bank for the very conduct that Hancock itself had already been found liable for. Although it appears that a future suit against U.S. Bank is unlikely, it is not impossible.

In the final analysis, Rule 19 is a rule of practicality. The Aircraft has been sold and its ownership no longer is at issue—the focus of this litigation as Bremer has crafted it is now solely on Hancock's alleged breach of contract by instructing the Indenture Trustee to foreclose Bremer's interest in the Aircraft in violation of the Operative Documents, and Bremer wishes to hold Hancock accountable for its alleged breach of contract. Despite Bremer's apparent wish not to include U.S. Bank in this litigation, joining U.S. Bank as a necessary party makes practical sense—it allows U.S. Bank to protect any interest it might have, and Hancock can guard against the risk of incurring double or inconsistent liability. Therefore, the Court finds that U.S. Bank is a necessary party pursuant to Rule 19(a), and orders that U.S. Bank be made a party to this

11

litigation.[5]

## C. Failure to State a Claim

### 1. Integrated Documents

Hancock argues that Bremer fails to state a claim for breach of the Operative Documents because Hancock is only a party to one of those documents—the Participation Agreement. Hancock argues that Bremer has selectively "cobbled together" various provisions of the Operative Documents to try to demonstrate that they are integrated, but really they are distinct and independent contracts that were negotiated for different purposes and were executed by different parties. Bremer responds that the Operative Documents are integrated, and that by acquiring Secured Certificates, Hancock became bound to the terms of the Participation Agreement (section 15(c)), the Indenture (section 10.09), and the Secured Certificates. Bremer further argues that it is an intended beneficiary of the Operative Documents and is therefore entitled to assert claims pursuant to them, even not specifically a party to all of them.

> New York law . . . requires that all writings which form parts of a single transaction and are designed to effectuate the same purpose be read together, even though they were executed on different dates and were not all between the same parties. This is in accord with the general rule that where several instruments, executed contemporaneously or at different times, pertain to the same transaction, they will be read together, even though they do not expressly refer to each other.

Kurz v. United States, 156 F. Supp. 99, 103-04 (S.D.N.Y. 1957) (citations omitted).[6] "In determining whether contracts are separable or entire, the primary standard is the intent

---

[5] Because U.S. Bank, Bremer, and Hancock are diverse, there appears no reason that U.S. Bank cannot be made a party. Therefore, there is no reason to conduct the Rule 19(b) indispensability analysis.

[6] The Operative Documents are to "be governed by, and construed in accordance with, the law of the State of New York." Am. Compl. Exs. A § 15(c), B § 10.12.

manifested, viewed in the surrounding circumstances." Rudman v. Cowles Commc'ns, Inc., 280 N.E.2d 867, 873 (N.Y. 1972).

A review of the Operative Documents reveals that they were intended to be read together. While the separate documents might have separate immediate purposes, they all form part of a single transaction and are designed to effectuate the same overall purpose—the Aircraft leveraged lease transaction. The Indenture, Trust Agreement, and Lease are all dated May 1, 1987. The Participation Agreement is dated May 14, 1987 and April 8, 1988. While not all parties signed all of the Operative Documents, the various documents refer to one another and refer to the various parties. Section 15(c) of the Participation Agreement makes the terms of the Participation Agreement binding upon, and inure to the benefit of, the Lessee, Loan Participant, Owner Participant, Certificate Holders, Indenture Trustee, and Owner Trustee. Am. Compl. Ex. A § 15(c). Section 10.04 of the Indenture states that the Owner Participant, Owner Trustee, Indenture Trustee, and Secured Certificates Holders are the intended beneficiaries of the Indenture. Id. Ex. B § 10.04. Section 10.09 of the Indenture states in relevant part: "Each Certificate Holder by its acceptance of a Secured Certificate agrees to be bound by this Indenture and all provisions of the Participation Agreement applicable to it." Id. § 10.09. Section 2.01 of the Indenture sets forth the form of the Secured Certificates, and includes the following language:

> Reference is hereby made to the Indenture for a statement of the rights and obligations of the holder of, and the nature and extent of the security for, this Secured Certificate . . . as well as for a statement of the terms and conditions of the trust created by the Indenture, to all of which terms and conditions in the Indenture each holder hereof agrees by its acceptance of this Secured Certificate.

Id. § 2.01. A review of these provisions and the context in which the Operative Documents were

13

created show that the Operative Documents were intended to be read together, and that Hancock is bound by the Participation Agreement, the Indenture, and the Secured Certificates.

### 2. Hancock's Liability

Hancock next argues that even if it were a proper party to this lawsuit, Bremer has nonetheless failed to state a claim. Hancock argues that Bremer's allegation that Hancock/U.S. Bank violated Section 4.04(a) of the Indenture by failing to pursue remedies pursuant to Section 15 of the Lease "defies logic" because U.S. Bank did pursue remedies pursuant to Section 15(e) of the Lease by asserting a rejection damages claim against NWA. Hancock further argues that the options available to U.S. Bank, in its capacity as Indenture Trustee, under Section 15 of the Lease were severely limited by NWA's bankruptcy.

Bremer responds that its allegations provide Hancock fair notice of Bremer's claims and satisfy the pleading standards under Rule 8(a) of the Federal Rules of Civil Procedure. Bremer alleges that pursuant to Section 4.04(a) of the Indenture—the equity squeeze protection clause—the Indenture Trustee was required to first exercise remedies under Section 15 of the Lease against NWA prior to exercising remedies against Bremer's interest. However, Bremer alleges that Hancock instructed the Indenture Trustee to act in such a way as to foreclose Bremer's equity interest prior to exercising any remedies under Section 15 of the Lease, by taking actions such as entering into Stipulations that prevented the Indenture Trustee from exercising remedies under Section 15 of the Lease, and negotiating a Rejection/New Lease Term Sheet that was a de facto foreclosure of Bremer's interest. Am. Compl. Exs. G, H. Bremer further alleges that by its actions, Hancock breached the implied covenant of good faith and fair dealing. Additionally, Bremer alleges that Hancock did not exercise a remedy for rejection

damages prior to foreclosing Bremer's interest on May 2, 2006, and that, in any event, rejection damages is not a remedy under Section 15(e) of the Lease.

Section 4.04(a) of the Indenture states:

Remedies. (a) If an Event of Default shall have occurred . . . the Indenture Trustee may exercise any or all of the rights and powers and pursue any and all of the remedies pursuant to this Article IV and, as a precondition thereto, in the event there shall have occurred and be continuing [any Lease Event of Default[7]], shall declare the Lease to be in default and concurrently exercise, as appropriate, any and all of the remedies pursuant to Section 15 of the Lease and may take possession of all or any part of the properties covered or intended to be covered by the lien and security interested created hereby or pursuant hereto and may exclude the Owner Participant, the Owner Trustee and Lessee and all persons claiming under any of them wholly or partly therefrom provided that the Indenture Trustee shall give the Owner Trustee 20 days' prior written notice of its intention to sell the Aircraft. Without limiting any of the foregoing, it is understood and agreed that the Indenture Trustee may exercise any right of sale of the Aircraft available to it, even though it shall not have taken possession of the Aircraft and shall not have possession thereof at the time of such sale.

Am. Compl. Ex. B. § 4.04(a). Section 15, a lengthy provision of the Lease, states that upon the occurrence of an Event of Default, the Lessor may declare the Lease to be in default, and may, "with respect to all or any part of the Airframe and any or all of the Engines . . . to the extent permitted by, and subject to compliance with any mandatory requirements of, applicable law then in effect," (1) take possession of the Airframe or any engine; (2) sell, hold, operate, use, or lease the Aircraft; (3) demand certain payments; or (4) rescind the Lease or "exercise any other right or remedy which may be available to it under applicable law or proceed by appropriate court action to enforce the terms hereof or to recover damages for breach hereof." Id. Ex. D § 15. Section 5.05 of the Indenture requires the Owner Trustee and the Indenture Trustee to agree

---

[7] A Lease Event of Default is, among other things, (1) failure to pay rent within ten business days after rent became due, (2) failure to make other payments due under the Lease, or (3) the commencement of a voluntary case under the federal bankruptcy laws. Am. Compl. Ex. D § 14.

that they will not "deal with the Aircraft or any other part of the Trust Indenture Estate" except as required by the terms of the Lease or in accordance with the authority and powers granted by the Indenture.  Id. Ex. B § 5.05.  Section 10 of the Participation Agreement requires each Loan Participant to agree "that it will not take any action in respect of the Trust Indenture Estate except through the Indenture Trustee pursuant to the Trust Indenture or as otherwise permitted by the Trust Indenture."  Id. § 10.

The Court concludes that Bremer has stated a claim for relief sufficient to preclude the granting of Hancock's Motion.  Bremer has alleged facts to support that Hancock instructed the Indenture Trustee to act to foreclose Bremer's equity interest without first exercising remedies under Section 15 of the Lease, in violation of Bremer's equity squeeze protection in Section 4.04(a) of the Indenture.  However, as Hancock vigorously argues, the actions taken by the Indenture Trustee here can not be viewed in a vacuum.  The Indenture Trustee exercised what options it could in light of NWA's bankruptcy and its intention to reject the Lease.  Whether Hancock/U.S. Bank violated the terms of the Operative Documents or breached the implied covenant of good faith and fair dealing by the actions it took sufficiently states a claim to defeat the Motion for Judgment on the Pleadings.

**D.     NYUCC**

Hancock argues that it can not be held liable for a violation of NYUCC § 9-610(b) because it is not a "secured party" as that term is defined in NYUCC § 9-102.  Hancock further argues the requirements of Article 9 are imposed on the Indenture Trustee, as the "secured party," and not Hancock.  However, as the Court understands Bremer's claims and arguments, Bremer is not asserting a claim against Hancock for directly violating NYUCC § 9-610(b).

16

Rather, Bremer is averring that NYUCC § 9-610(b)'s requirement of commercial reasonableness is imposed on the Indenture Trustee as a "secured party," the foreclosure sale of the Aircraft was not commercially reasonable, and Hancock breached its contractual obligations to Bremer by issuing binding instructions to the Indenture Trustee that caused the Indenture Trustee to violate the requirement of commercial reasonableness. Essentially, Bremer's position that Hancock's actions caused the Indenture Trustee to violate the requirement of commercial reasonableness serves as a basis to support Bremer's breach of contract theory against Hancock.

Bremer alleges several reasons it believes the foreclosure sale was commercially unreasonable, including (1) Hancock's failure to follow the contractually agreed upon procedures, (2) the short time span between the March 30, 2006 Acceleration Notice and the May 2, 2006 date of the foreclosure, (3) the depressed market for the Trust Indenture Estate, (4) whether the overbid required the Indenture Trustee to adjourn the foreclosure sale until Bremer's objections could be heard by the Bankruptcy Court, and (5) whether the overbid amount was sufficient.

Hancock argues that the foreclosure sale was commercially reasonable. To determine whether disposition of collateral was commercially reasonable, New York courts consider whether the resale price was optimal (the "proceeds" test), and whether the procedures used conform to commercially accepted standards (the "procedures" test). See In re Bob Daubney's Bowling Enters., Inc., No. 89-CV-615, 1989 WL 74411, at *2-3 (N.D.N.Y. June 29, 1989) (citing Bankers Trust Co. v. J.V. Dowler & Co., 47 N.Y.2d 128, 135 (N.Y. 1979)).

At this stage of the proceedings, Bremer has alleged sufficient facts to allow the "NYUCC theory" to support its breach of contract claim against Hancock. However, whether

Bremer will be successful on this theory, and whether the foreclosure sale was commercially reasonable, are questions for another day.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Judgment on the Pleadings [Docket No. 52] is **DENIED**.  **IT IS FURTHER ORDERED** that U.S. Bank be made a party to this litigation.

BY THE COURT:


      s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  April 9, 2007.